UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                        :

ERIC HU, NY DRILLING, INC., AND 888            :         17-CV-2348 (ARR) (JRC)
CONSULTING CORP.,                                :
                                                        :
                      *Plaintiffs*,         :         **OPINION & ORDER**
                                                         :
        -against-                         :
                                                        :
THE CITY OF NEW YORK, RICK D. CHANDLER,    :
DENNIS BURKART, JOSE L. ESPAILLAT,          :
MUHAMMAD IMRAN, MICHAEL CAMERA, RAFAEL  X
COLLIS, SALVATOR CONCIALDI, SALVATORE
CONCIALDI, ROBERT TURNER, CESAR ROMERO, D.
ERIC HOYT, AND JOHN AND JANE DOES NOS. 1-10,

                    *Defendants*.

---------------------------------------------------------------

ROSS, United States District Judge:

       The plaintiffs in this action are Eric Hu, an Asian-American excavator and consultant; 888

Consulting Corporation, a company he formed in 2015; and NY Drilling, Inc. ("NY Drilling"), a

contracting company that previously employed Mr. Hu and now contracts with 888 Consulting

Corporation. Collectively they allege that various officials working for the New York City

Department of Buildings ("DOB"), under the auspices of Assistant Chief Inspector Dennis Burkart

and motivated by Mr. Burkart's racial and personal animus, engaged in a campaign of

discriminatory enforcement of municipal building codes against plaintiffs. Plaintiffs assert equal

protection claims under the theory of selective enforcement articulated in *LeClair v. Saunders*, 627

F.2d 606 (2d Cir. 1980), statutory claims under 42 U.S.C. § 1981, and a state-law taxpayer action

claim. Before me is defendants' Motion for Summary Judgment. For the reasons that follow, I

grant their motion in its entirety.

## BACKGROUND

Plaintiffs' record is rife with inconsistencies. Thus, and before providing a factual summary of the case, I set the stage for parties' averments. At the heart of this case is plaintiffs' contention that in 2016 and under the directive of defendant Burkart, officials within the DOB discriminatorily enforced the New York City Building Code against plaintiffs based on Mr. Burkart's racial animus against Asians and personal malice toward Mr. Hu. *See* Pls.' Mem. in Opp'n Summ. J. ("Pls.' Opp'n"), ECF No. 122. While no other DOB official is alleged to harbor anti-Asian bias and personal malice against Mr. Hu, plaintiffs suggest that the other named defendants carried out Mr. Burkart's orders, acted on his referrals, and/or failed to take action to rein in his discriminatory enforcement. *See* First Am. Compl. ¶¶ 3−12 ("FAC"), ECF No. 33. Plaintiffs' case rests upon a series of enforcement actions that were levied against them by defendants but, plaintiffs contend, were not enforced against non-Asian workers engaged in materially similar conduct (plaintiffs' comparators). *See id.* ¶¶ 98−245. Chief among those enforcement actions—and as relevant to the instant motion, *see* Discussion II, *infra*—was a notice of violation issued by defendant Burkart against plaintiff NY Drilling on July 11, 2016 for work being performed at 139-20 34th Avenue (the "34th Avenue worksite"). *Id.* ¶¶ 190−92.

As regards the 34th Avenue enforcement action and its comparator, there are very few facts on which parties agree. While I recount them here in the light most favorable to plaintiffs, resolution of defendants' motion requires a thorough examination of the full record. Accordingly, I review *seriatim* the undisputed facts of this case, the facts alleged in plaintiffs' First Amended Complaint, and the disputed facts alleged in defendants' and plaintiffs' briefing on summary judgment.

***Parties' Undisputed Facts***

Plaintiff Hu is the sole owner and employee of 888 Consulting Corporation, Pls.' Resp. to Defs.' 56.1 and Pls.' 56.1 ¶¶ 2, 6 ("Pls.' 56.1"), ECF No. 120, and a part-time manager of NY Drilling, *see* Pls.' 56.1 ¶ 2–3. According to Mr. Hu, 888 Construction Corporation, which he founded in 2015, FAC ¶ 48, performs various services for clients, including "interpreting between Chinese and English, looking around the job sites, and helping out the owners of the job sites," Pls.' 56.1 ¶ 7. While Mr. Hu has participated in approximately seventy-five percent of New York Drilling's construction jobs, *id.* ¶ 5; Defs.' 56.1 ¶ 5, ECF No. 117, the construction company is jointly owned by Mr. Hu's brother, Wei Ching Hu, and Wayne Fried, a Caucasian man. *See* Pls.' 56.1 ¶ 4; Defs.' 56.1 ¶ 4.

Between approximately January 2008 and July 2018, defendant Burkart was employed by the DOB as Assistant Chief of its Concrete Unit. Pls.' 56.1 ¶ 8. As a supervisor, Mr. Burkart was responsible for generating route sheets for concrete inspectors in the unit. *Id.* at ¶ 9. In addition to his administrative work, and at his discretion, Mr. Burkart also performed some worksite inspections. Pls.' 56.1 ¶ 9; Defs.' 56.1 ¶ 10.

On July 11, 2016, defendant Burkart visited plaintiffs' 34th Avenue worksite, Pls.' 56.1 ¶ 13, where Eric Hu and men of different races were working, *see* Pls.' 56.1 ¶¶ 14−15; Defs.' 56.1 ¶¶ 14−15 ("In the words of [p]laintiff Hu, '[a]ll the workers worked together at the same project, whether you were white or [B]lack or [Hispanic] or [Asian].'" (quoting Defs.' Aff. in Supp. Mot. Summ. J. ("Defs.' Aff."), Ex. C 110:1−4 ("Hu Dep."), ECF No. 118-3)). While parties dispute the nature of Mr. Burkart's visit—defendants describe it as an inspection, Defs.' 56.1 ¶ 16, whereas plaintiffs allege Mr. Burkart "opened the gate, took pictures, and left," Pls.' 56.1 ¶ 16—they agree that as a result of this visit, Mr. Burkart issued NY Drilling a notice of violation for standing water

at the worksite and for welding without a license. Pls.' 56.1 ¶ 17.

Sometime after August 3, 2016, Wei Ching Hu, Mr. Hu's brother and the owner of NY Drilling, submitted a sworn statement to the DOB that the violation for standing water had been cured. Pls.' 56.1 ¶ 24; Defs.' 56.1 ¶ 24; *see also* Defs.' Aff., Ex. F, ECF No. 118-6. NY Drilling's Certificate of Correction was approved by the DOB thereafter. *See* Defs.' Aff., Ex. G, ECF No. 118-7. On August 30, 2016, the New York City Office of Administrative Trials and Hearings ("OATH") held a hearing on the notice of violation for standing water. During the hearing, NY Drilling denied the allegation of standing water at the 34th Avenue worksite but did not rebut the DOB's evidence. Pls.' 56.1 ¶¶ 21; Defs.' 56.1 ¶¶ 21. The notice of violation was sustained, and NY Drilling was issued a four-hundred-dollar civil penalty. *Id*. Plaintiffs were subsequently fired from their work at 34th Avenue. Pls.' 56.1 ¶ 27; Defs.' 56.1 ¶ 27.

Both parties seem to agree that on a separate occasion, when a different group of workers were onsite, defendant Burkart inspected the 34th Avenue worksite and did not issue a notice of violation for standing water. *See* Pls. 56.1 ¶¶ 13, 15; Defs.' 56.1 ¶¶ 22, 25. However, as detailed below, parties' respective renditions of this incident otherwise diverge.

***Plaintiffs' First Amended Complaint***

Plaintiffs' First Amended Complaint is light on details about the 34th Avenue enforcement action and its comparator. Plaintiffs allege that on July 11, 2016, defendants issued them a notice of violation for having a pool of water[1] at their worksite. FAC ¶ 190. The pool of water was being used to flush a drilling hole, which, according to plaintiffs, is standard practice when drilling. *Id.* ¶ 191. Due to heavy rains on and around July 11th, the pool of water was full during defendant

---

[1] The terms "catchment pond," "pool of water," and "standing water" are used interchangeably throughout parties' record. *Compare* FAC ¶ 190 *with* FAC ¶ 191 *and* Pls.' 56.1 ¶ 13.

Burkart's visit. *Id.* ¶ 190. At an unspecified later date, defendant Burkart returned to the 34th Avenue worksite when "similarly situated Caucasian workers were working on the pool." *Id.* ¶ 201. The pool was still filled with water; however, Mr. Burkart did not serve the workers onsite a notice of violation. *Id.*

While ultimately immaterial to the instant motion for reasons discussed herein, *see* Discussion II, *infra*, plaintiffs' amended complaint describes three additional instances of discriminatory enforcement at worksites in Flushing, Queens: at 45-37 162nd Street, 35-20 146th Street, and 42-47 157th Street. *See* FAC ¶¶ 98−199. Plaintiffs compare their treatment at these worksites to defendants' treatment of two construction companies to whom, plaintiffs allege, they are similarly situated: Vera Construction and Westerman Construction Company, Inc. *Id.* ¶¶ 209−45.

***Defendants' Disputed Facts in Support of Summary Judgment***

In their Motion for Summary Judgment, defendants focus on plaintiffs' proffered comparison at the 34th Avenue worksite; their chronology accords with plaintiffs' First Amended Complaint. Defendants allege that Mr. Burkart first inspected the 34th Avenue worksite on July 11, 2016, wherein he saw a pool of standing water "that had not been drained properly at the cellar level." Defs.' 56.1 ¶ 16. According to defendants, it is "problematic" for a worksite to have a large amount of standing water because the large pools can be breeding grounds for mosquitos and lead to the spread of disease. *Id.* ¶ 18−19. During his inspection, Mr. Burkart also observed that welding was being performed at the worksite without a licensed welder. *Id.* ¶ 20. Mr. Burkart issued plaintiff NY Drilling a notice of violation for the pool, which was sustained by OATH on August 30, 2016. *Id.* ¶¶ 17, 21.

According to defendants, Mr. Burkart next returned to the 34th Avenue worksite on August

15, 2016, by which point NY Drilling had cured the violation. *See id.* ¶¶ 22−24. Mr. Burkart understood his visit to be a reinspection and did not issue a standing water violation to workers onsite. *Id.* ¶¶ 22, 25.

### Plaintiffs' Disputed Facts in Opposition to Summary Judgment

It is here that the plaintiffs' averments become irreconcilable. At summary judgment, plaintiffs proffer facts that materially contradict defendants' proffered facts and, more concerningly, undercut plaintiffs' own pleadings. For the first time, plaintiffs allege 1) that there was *never* standing water at the 34th Avenue worksite on July 11, 2016, 2) that the comparative incident at 34th Avenue—during which defendant Burkart observed standing water but did not issue its non-Asian workers a notice of violation—occurred *prior* to July 11, 2016, not after, and 3) that the workers onsite during this incident, while majority non-Asian, were not all Caucasian. Pls.' 56.1 ¶¶ 13, 16.

According to plaintiffs, defendant Burkart first visited the 34th Avenue worksite on March 23, 2016. *Id.* ¶ 13. At the time, NY Drilling, which had recently taken over the worksite, was performing support-of-excavation drilling. *Id.* The construction workers present at the site that day were Wayne Fried; Steven Scrudato, a Caucasian man; Ron Vassar, a Black man hired as a dayworker; and Joe Sun, an Asian man who was then operating the drill with Mr. Scrudato. Pls.' 56.1 ¶¶ 13−15. Eric Hu was also onsite. *Id.* The drill being used by Mr. Scrudato and Mr. Sun collected water in a catchment pond. *See id.* ¶ 13. The water was turgid while the drill was in use and was "drained [and] recycled for later." *Id.*

After speaking with Mr. Hu, defendant Burkart approached the two Caucasian men—Mr. Scrudato and Mr. Fried—and asked to see their approved plans for drilling. *Id.* Mr. Burkart "questioned the pipe casing being used for the water used in the drill," and it met specification. *Id.*

Mr. Burkart continued to speak to the two men "off the worksite," asking Mr. Scrudato for whom he worked. *Id.* After learning it was Mr. Fried and Mr. Hu, Burkart warned Mr. Scrudato to be careful, explaining that "Chinese contractors in general worked cheap, that their working cheap drove [Mr. Burkart] out of business, and that Eric Hu in particular was a 'rat.'" *Id*; *see also* Pls.' Aff. in Opp'n Summ. J. ("Pls.' Aff."), Exs. 17 ("Scrudato Aff.") & 22 ("Fried Aff."), ECF Nos. 121-17, 121-22. Plaintiffs submit that defendant Burkart did not take any adverse action against the workers on March 23, even though he approved their drilling, saw drilling taking place, and was "in a position to observe" the catchment pond onsite.[2] Pls.' 56.1 ¶ 13.

Plaintiffs allege that defendant Burkart did not take adverse action against workers at the 34th Avenue worksite until July 11, 2016, by which point drilling had ceased, the catchment pond had been drained, and Mr. Hu had taken over the worksite. Pls.' 56.1 ¶¶ 16, 18; Pls.' Aff., Ex. 2 111:14−18 ("Hu Dep."), ECF No. 121-2 ("The [support-of-excavation] drilling took two to three weeks . . . [Mr. Burkart] did not issue even one ticket to the team until they finished the drilling, I took over, [and] I was laying down some wood plank. At that point, [Mr. Burkart] issued a ticket."). At the time of Mr. Burkart's return, the majority of people onsite were Asian. *See* Pls.' 56.1 ¶ 15 (listing Eric Hu, Steven Scrudato, Ron Vassar, and two other Asians as present). Mr. Burkart "never entered the site, . . . asked [Mr. Scrudato] for his welding license [,] [or] investigated the water ponded on the site." Scrudato Aff. 2. Instead, defendant Burkart merely opened the gate to the site, "took pictures and left." Pls.' 56.1 ¶ 13. Plaintiffs contend that even though the catchment

---

[2] Defendant Burkart did, however, demand that NY Drilling install a plywood construction fence against adjacent buildings, in disregard of Mr. Fried's objection that the municipal building code required visual inspection of the walls of adjacent buildings. Pls.' 56.1 ¶ 13. To prevent Mr. Burkart from issuing a "stop work order," Eric Hu constructed a plywood fence. Within one week, the Building Enforcement Safety Team (the "BEST Squad"), *see* FAC ¶ 10, ordered that it be removed, Pls.' 56.1 ¶ 13.

pond was *not* in use by July 11, defendant Burkart returned two days later and issued a notice of violation for welding without a license and for standing water. Scrudato Aff. 2.

Plaintiffs do not dispute that in August 2016, Wei Ching Hu certified to the DOB that the violation for standing water had been cured. Pls.' 56.1 ¶ 24. However, plaintiffs contend that this admission was untrue and was made only to "avoid Defendant Burkart imposing a protracted work stoppage regardless of the truth." *Id.* Plaintiffs were ultimately fired from the 34th Avenue worksite. *Id.* ¶ 27; Defs.' 56.1 ¶ 27. Eric Hu testified that the worksite's owner took such action because Mr. Burkart "came to the job site quite frequently and harassed [Mr. Hu]." Hu Dep. 108:15−18.

## PROCEDURAL HISTORY

Plaintiffs' First Amended Complaint asserted claims under the Equal Protection Clause, the Due Process Clause, 42 U.S.C. § 1981, the *Monell* doctrine, and New York tax law. After defendants moved to dismiss plaintiffs' amended complaint, *see* Defs.' Mot. Dismiss, ECF No. 44, I granted their motion and dismissed plaintiffs' claims in their entirety. *See* Mar. Op & Order 15−29 ("Op. & Order"), ECF No. 49. In part, I concluded that plaintiffs' equal protection and § 1981 claims, which proceeded under selective enforcement and "class-of-one" theories,[3] failed because plaintiffs had not pleaded sufficiently similar comparators from whom they were treated differently. *Id.* at 10−11. Having already given plaintiffs an opportunity to cure what I saw as defects in their original pleading, I dismissed plaintiffs' equal protection, § 1981, due process, and *Monell* claims with prejudice. *Id.* at 18. Plaintiffs appealed my decision.

On appeal, the Second Circuit clarified the relationship between the selective enforcement

---

[3] The parties agreed that these claims were brought as selective enforcement and "class-of-one" claims. *See* Defs.' Mot. Dismiss 11–13, ECF No. 44; Pls.' Mot. in Opp'n 29−38, ECF No. 45.

doctrine established by *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980) and the "class-of-one" theory articulated under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). *See Hu v. City of N.Y.*, 927 F.3d 81, 90−96 (2d Cir. 2019). Explaining that the doctrines provide "distinct pathways for proving a non-class-based Equal Protection violation," the Court concluded that the similarity standard for a "class-of-one" claim is "more stringent" than the standard for a *LeClair* selective enforcement claim, which "merely requires a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances." *Id.* at 93. The Court affirmed my dismissal of the "class-of-one" claims as plaintiffs had not proffered comparators that satisfied the "more stringent similarity standard" required to state that claim. *Id.* at 96, 100−01. However, the Second Circuit held that the 34th Avenue worksite and its comparator allowed the plausible inference of "a 'reasonably close resemblance' between plaintiffs and the white workers." *Id.* at 97. Accordingly, the Court vacated my dismissal of plaintiffs' *LeClair* § 1981 and equal protection claims. *Id.* at 97−100.

Defendants now move for summary judgment on plaintiffs' state tax law claim, over which I had declined to exercise jurisdiction, as well as their § 1981 and equal protection claims for race-based and malice-based selective enforcement.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276,

280 (2d Cir. 1999) (citation and internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); *see* Fed R Civ P 56.1. The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citation omitted). "[T]he non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor, and only when that proof is slight is summary judgment appropriate." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (first citing *Anderson*, 477 U.S. at 256, and then citing *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

## DISCUSSION

### I.    Legal Standard of a Selective Enforcement Claim.

The gravamen of plaintiffs' complaint is that defendant Burkart and his colleagues at the DOB discriminatorily enforced building codes against plaintiffs based on Mr. Burkart's racial bias against Asians and his personal animus toward Mr. Hu. Put differently, defendants selectively

enforced municipal laws against plaintiffs in violation of their constitutional right to equal protection as well as their statutory rights under § 1981. While 42 U.S.C. § 1983 allows individuals to sue for deprivations of constitutional rights carried out under color of state law, § 1981 provides that all persons "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981.[4]

To prevail on a *LeClair* equal protection claim, a plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)

---

[4] At summary judgment, defendants allege that plaintiffs' 42 U.S.C. § 1981 claim should be dismissed as a matter of law based on this Circuit's decision in *Duplan v. City of N.Y.*, 888 F.3d 612 (2d Cir. 2018), rendered shortly after my ruling on defendants' Motion to Dismiss. In *Duplan*, the Second Circuit concluded that amendments to the Civil Rights Act did not disturb the Supreme Court's holding in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), that 42 U.S.C. § 1983 provides the *exclusive* remedy for violations of rights guaranteed under § 1981. *Duplan*, 888 F.3d at 621. Defendants contend that in the wake of *Duplan*, plaintiffs do not have a separate cause of action against them under § 1981. *See* Defs.' Mem. in Supp. Summ. J. 6 ("Defs.' Mot. Summ. J."), ECF No. 119. Defendants' argument, however, misunderstands the Court's conclusion and misconstrues plaintiffs' claim. § 1983 is not "a source of substantive rights"; rather it "provides a method for vindicating federal rights elsewhere conferred, such as those conferred  by § 1981." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citation and internal quotations omitted). While the *Duplan* Court agreed that § 1983 remains the exclusive remedy for § 1981 violations, it acknowledged that a § 1981 claim can be brought pursuant to § 1983. *See Duplan*, 888 F.3d at 621 (finding the plaintiff's § 1981 claims would still fail even were they construed as brought under § 1983 because plaintiff had "failed to allege that the challenged acts were performed pursuant to a municipal policy or custom, as required to maintain a § 1983 action against a municipality" (citation and internal quotations omitted)); *see also Colon v. City of N.Y.*, No. 19-CV-10435 (PGG) (SLC), 2021 WL 4943552, at *8, n. 3 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted*, 2021 WL 4427169 (S.D.N.Y. Sept. 26, 2021) ("[The d]efendants' argument that [the plaintiff's] Section 1981 claims should be dismissed for lack of a private right of action, is incorrect, because [the plaintiff] has framed his claims as Section 1981 violations brought pursuant to Section 1983"). Here, plaintiffs' § 1981 claim proceeds under § 1983, *see* FAC ¶¶ 40–44, and is therefore actionable. After all, the Second Circuit's decision in *Hu*, wherein plaintiffs' § 1981 claim was revived, was handed down more than a year after *Duplan* was decided.

(citation omitted). A plaintiff asserting a selective enforcement claim under § 1981 must likewise first allege an instance in which he was treated differently from a similarly situated non-minority. *See Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000); *see also Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir. 1988) (rehearing en banc) ("To support a [§ 1981] claim of selective enforcement, appellants must allege purposeful and systematic discrimination by specifying instances in which they were singled out for unlawful oppression in contrast to others similarly situated." (citation and internal quotations omitted)). Thus, to succeed on a selective enforcement claim arising under either the Equal Protection Clause or § 1981, a plaintiff must, as threshold matter, provide a comparator to whom they are similarly situated. *See Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 449 (W.D.N.Y. 2009) ("[T]he Second Circuit has stated that 'a showing that the plaintiff was treated differently compared to others similarly situated' is a 'prerequisite' . . . to a selective enforcement claim." (quoting *Church of the Am. Knights of the KKK v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004))), *aff'd*, 392 F. App'x 887 (2d Cir. 2010). The standard for determining whether a comparator is sufficiently similar is identical for § 1981 and equal protection claims. *See Hu*, 927 F.3d at 101.

## II.   Enforcement Actions and Comparators to be Considered at Summary Judgment.

Before evaluating whether plaintiffs have proffered sufficiently similar comparators to survive defendants' instant motion, I must first identify the relevant enforcement actions and comparators to be considered. In their Amended Complaint, plaintiffs alleged four discriminatory enforcement actions—at 34th Avenue; at 45-37 162nd Street; at 35-20 146th Street; and at 42-47 157th Street, *see* FAC ¶¶ 98−199—and provided three purported comparators to support their *LeClair* and § 1981 selective enforcement claims. The first comparator related to the 34th Avenue worksite; the second related to a job site located at 43-05 162nd Street, at which a company named

Vera Construction was involved in foundation work; and the third related to a site overseen by general contractor Westerman Construction Company, Inc. at 542 West 22nd Street. *Id.* ¶¶ 200−245.

Defendants contend that at this juncture, plaintiffs' *LeClair* equal protection claims are limited to the 34th Avenue worksite and move for summary judgment on the same. Defendants argue that because the Second Circuit concluded that plaintiffs' *LeClair* claims should not have been dismissed in light of the 34th Avenue standing water violation, plaintiffs' *LeClair* claims with respect to the other jobsites were not revived on appeal. *See* Defs.' Mem. in Supp. Summ. J. 8–9 & n.4 ("Defs.' Mot. Summ. J."), ECF No. 119. I disagree. It is true that in reversing my decision on plaintiffs' equal protection claims, the Second Circuit explained that "only the 34th Avenue Jobsite plausibly satisfie[d] the lower similarity standard of a *LeClair* claim—albeit barely." *See Hu*, 927 F.3d at 96. The Court's ultimate holding was not so circumscribed, however: The Court vacated my dismissal of the plaintiffs' *LeClair* selective enforcement claims of race-based and malice-based discrimination without limitation. *Id.* at 100. In reaching its conclusion, the Court explained that remand of plaintiffs' *LeClair* claims was appropriate because plaintiffs had "plausibly plead[ed] *at least one* similarly situated comparator," *see id.* at 96 (emphasis added); in other words, by satisfying the *LeClair* standard for at least one enforcement action, plaintiffs overcame the 12(b)(6) threshold for plaintiffs' *LeClair* claims generally. Accordingly, I find that the Second Circuit revived plaintiffs' *LeClair* claims with respect to each of the enforcement actions pleaded by plaintiffs.

Notwithstanding this conclusion, I nevertheless find that plaintiffs have abandoned all but their 34th Avenue *LeClair* claims. "[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson*

*v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *see also Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.NY. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way"). This principle applies with full force here. In the face of defendants' contention that plaintiffs' *LeClair* claims are limited to the 34th Avenue worksite, *see* Defs.' Mot. Summ. J. 8 & n.4, plaintiffs have failed to develop any arguments to the contrary. In their Rule 56.1 Statement, plaintiffs dispute defendants' narrowing of their *LeClair* equal protection claims to the 34th Avenue worksite. *See* Pls.' 56.1 ¶ 12 (explaining that the Second Circuit "did not restrict [p]laintiffs' discovery or ultimate proofs to the 34th Avenue jobsite"). However, apart from this single—and general—acknowledgement, plaintiffs remain silent on the vitality of their *LeClair* claims with respect to their other three enforcement actions. Indeed, no mention of the 162nd or West 22nd Street Comparators, nor the 146th Street and 157th Street worksites appears *anywhere* in plaintiffs' opposition to summary judgment. And while plaintiffs cursorily mention the factual circumstances of the 162nd Street enforcement action, plaintiffs do not expound on this worksite in any meaningful way. *See* Pls.' Opp'n 7−9. Nor do they tether it to any one of their proffered comparators. *See id.* Instead, plaintiffs' *LeClair* equal protection analysis focuses exclusively on the 34th Avenue worksite. *See* Pls.' Opp'n 11 ("Plaintiffs have shown significant issues of material fact regarding Defendant Burkart's selective treatment of NY Drilling, Inc. between two instances at the 34th Street jobsite."). In the case of a counseled party, as here, a court may infer abandonment of claims "from the papers and circumstances viewed as a whole . . . [and] conclude that abandonment was intended." *Jackson*, 766 F.3d at 196. In the absence of any argument related to plaintiffs' other worksites and comparators, I find this inference of abandonment appropriate. I therefore deem plaintiffs' *LeClair* claims abandoned with respect to all but their 34th Avenue

worksite.

Even assuming, arguendo, that these claims were not abandoned, they would fail as a matter of law because plaintiffs have not adduced new evidence relating their three other enforcement actions to the 162nd Street and West 22nd Street comparators. While the Second Circuit revived all of plaintiffs' *LeClair* claims, it found that "*only* the 34th Avenue Jobsite plausibly satisfie[d] the . . . standard of a *LeClair* claim" based on alleged similarities between plaintiffs and white workers at the site. *Hu*, 927 F.3d at 96 (emphasis added). To the extent that the *Hu* court invited plaintiffs to supply additional evidence on the similarity of their comparators to their other alleged enforcement actions, plaintiffs have not met their burden. Discovery now behind them, plaintiffs do not submit any additional evidence on the 162nd Street and West 22nd Street comparators that would suggest these comparators have a "reasonably close resemblance" to plaintiffs. As such and for the very reasons that plaintiffs' other comparators failed to satisfy the *LeClair* standard on a motion to dismiss, *see* Op. & Order 15−18, *Hu*, 927 F.3d at 96−101, they also fail at summary judgment. After all, "[t]he standards with respect to the similarly-situated element are much more stringent on a summary judgment motion than on a Rule 12(b)(6) motion for failure to state a claim," *Casciani*, 659 F. Supp. 2d at 445–46.

This reasoning applies with like force to plaintiffs' § 1981 claim. As with a *LeClair* equal protection claim, "a plaintiff must allege at least one instance in which he was treated differently from a similarly situated non-minority" to prevail on a selective enforcement § 1981 claim. *Hu*, 927 F.3d at 101. Although § 1981 protects interests different from those protected by the Equal Protection Clause, its "standard for determining whether a plaintiff and a comparator are similarly situated [for a selective enforcement claim] is identical." *Id.* Accordingly, on appeal, the Second Circuit revived plaintiffs' § 1981 claim after concluding plaintiffs had sufficiently pleaded a

*LeClair* equal protection claim based on the 34th Avenue worksite. *Id.* at 101−02. While plaintiffs'
§ 1981 selective enforcement claim was revived with respect to all of plaintiffs' enforcement
actions, at summary judgment, plaintiffs' § 1981 claim befalls the same fate as plaintiffs' equal
protection claims: In the absence of any new evidence on the similarities between the 162nd Street,
146th Street, and 157th Street enforcement actions and the 162nd and West 22nd Street
comparators, plaintiffs' § 1981 claim cannot be sustained for any worksite but that at 34th Avenue.

In sum, while plaintiffs' *LeClair* equal protection and § 1981 claims were revived on appeal
with respect to all of plaintiffs' enforcement actions, I now consider plaintiffs' claims only as they
relate to the 34th Avenue standing water violation.

## III. Plaintiffs' Equal Protection and § 1981 Claims Fail Because Plaintiffs' Have Not Provided Sufficiently Similar Comparators.

### A. The 34th Avenue Worksite

Having determined that plaintiffs' *LeClair* and § 1981 claims proceed with respect to the
34th Avenue standing water violation only, I am first required to identify the universe of facts
related to this site that I must consider. While I construe all facts in the light most favorable to
plaintiffs, *see Capobianco v. City of N.Y.*, 422 F.3d 47, 54–55 (2d Cir. 2005), the record provided
by plaintiffs is replete with contradictions. As regards the July 11, 2016 violation, plaintiffs have
averred both that they had a pool of standing water onsite for which they were violated *and* that
they were violated by defendant Burkart even though there was no standing water onsite.
Specifically, in their First Amended Complaint, plaintiffs pleaded defendant Burkart
discriminatorily issued them a violation based on an onsite pool of water that was then full due to
heavy rains. FAC ¶¶ 190–91. At summary judgment, plaintiffs for the first time submit that there
was *no* pool of water on site on July 11, 2016, suggesting that defendant Burkart's violation was
altogether legally improper. *See* Pls.' Opp'n 6 ("The catch pond had been drained and the water

recycled since March 2016."); Pls.' 56.1 ¶ 16 (denying that there was a catchment pond full of water on July 11, 2016); Hu Dep. 111:14−17 ("The drilling took two to three weeks . . . Dennis did not issue even one ticket to the team until they finished drilling.").[5] Plaintiffs' proffered comparator fares no better. While plaintiffs pleaded that Mr. Burkart did not issue a violation when he returned to the 34th Avenue worksite at a later date because "similarly situated Caucasian workers were working on the pool," *see* FAC ¶ 201, plaintiffs now allege that the "similarly situated group" was a group of majority non-Asians who were working at the 34th Avenue worksite on March 23, 2016 but were not issued a violation despite there being a catchment pond onsite, Pls.' 56.1 ¶ 13.

To summarize, I am presented with two contradictory accounts by plaintiffs: In one, the 34th Avenue worksite had standing water on March 23, 2020, when defendant Burkart came to inspect it. Pls.' 56.1 ¶ 13. Despite seeing the standing water, defendant Burkart did not issue a violation because most workers present were non-Asian. *Id.* ¶¶ 13, 15. Mr. Burkart returned to the site on July 11, 2016, opened the gate, took photos of the site, and then left. *Id.* ¶ 13. Although there was no standing water on July 11, Defendant Burkart issued plaintiffs a notice of violation because the majority of workers present were Asian. *Id.* ¶¶ 15, 16. In the other account, defendant Burkart first visited the 34th Avenue worksite on July 11, 2016, during which there was standing water due to recent rainfall. FAC ¶¶ 190−92. Defendant Burkart issued a standing water violation.

---

[5] For the first time, plaintiffs also allege that on July 11, 2016, defendant Burkart issued them a notice of violation for welding without a license, even though Steven Scrudato, the welder onsite, is licensed. *See* Pls. 56.1 ¶ 17. However, plaintiffs make no allegation that they were singled out for this violation as compared to a similarly situated group; rather they allege the violation was improper altogether. Accordingly, this claim does not sound in selective enforcement, the crux of plaintiffs' case. "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010). Nor may a party raise new theories of liability. *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 319 (N.D.N.Y. 2013).

*Id.* At a later date, defendant Burkart revisited the site when the workers onsite were Caucasian. *Id.* ¶ 201. Despite there being standing water, Burkart did not issue a violation. *Id.*

Defendants argue, *inter alia*, that plaintiffs should be bound by their prior admissions because plaintiffs' factual disputes at summary judgment "contradict factual admissions from plaintiffs' amended complaint." *See* Defs.' Reply in Supp. Summ. J. 2−3 ("Defs.' Reply"), ECF No. 124. Indeed, it is well settled that "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir. 1985). Similarly, a "party cannot attempt to defeat a summary judgment motion by contradicting factual allegations in his complaint." *Rojas v. Roman Cath. Diocese of Rochester*, 783 F. Supp. 2d 381, 407 (W.D.N.Y. 2010), *aff'd*, 660 F.3d 98 (2d Cir. 2011), *cert. denied*, 565 U.S. 1260 (2012); *see also Webadviso v. Bank of Am. Corp.*, No. 9-CV-5769 (DC), 2010 WL 521117, at *2 (S.D.N.Y. Feb. 16, 2010) ("[Plaintiff] cannot now take a position, in an effort to defeat summary judgment, that so clearly contradicts the allegations of his own complaint."), *aff'd*, 448 F. App'x 95 (2d Cir. 2011); *Heletsi v. Lufthansa German Airlines, Inc.*, No. 99-CV-4793 (SJ), 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) ("In [the p]laintiff's opposition papers to [the d]efendant's motion for summary judgment, [the p]laintiff alleges a different and inconsistent set of facts than those alleged in his Complaint. . . . This Court refuses to credit [the p]laintiff's new allegation of facts, and takes as true the facts contained in [the p]laintiff's complaint."); *cf. Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) ("To . . . require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings (or, as here, to facts not alleged in their pleadings), would 'license the mendacious to seek windfalls in the litigation lottery.'" (quoting *Arrington v. United States*, 473 F.3d 329, 344 (D.C. Cir. 2006) (Brown, J.,

concurring in part and dissenting in part))), *cert. denied*, 565 U.S. 1260 (2012). Notwithstanding this consensus of case law, it is unnecessary to resolve whether plaintiffs should be bound by their prior admissions: Under either factual theory advanced by plaintiffs, plaintiffs' *LeClair* and § 1981 claims fail because plaintiffs do not proffer a sufficiently similar comparator.

### B.  Analysis

Plaintiffs argue that they have shown significant issues of material fact that defendants discriminatorily enforced the municipal building code at the 34th Avenue worksite and interfered with plaintiffs' ability to make contracts. Pls.' Opp'n 11−12. Defendants argue they have not. *See* Defs.' Mot. Summ. J. 8−13; Defs.' Reply 9−13. Despite deeply concerning evidence in the record of racial and personal malice, I find that plaintiffs have failed to satisfy the threshold requirement of their selective enforcement claims: the existence of one or more similarly situated comparators. I thus conclude that summary judgment is appropriate on plaintiffs' equal protection and § 1981 claims.

"[D]emonstrating that a plaintiff has been treated differently from similarly situated individuals is the *sine qua non* of a . . . selective enforcement violation." *Kamholtz v. Yates Cnty.*, No. 08-CV-6210 (MAT), 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (internal quotation marks omitted). When evaluating an equal protection or a § 1981 claim therefore, the first question that must be asked is whether the plaintiff has proffered a sufficient comparator. *See Zahra*, 48 F.3d at 683; *Brown*, 221 F.3d at 339. In general, whether individuals are similarly situated "is a factual issue that should be submitted to the jury." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001). However, "[t]his rule is not absolute." *Id.* Where it is clear that no reasonable jury could find the similarly situated prong of a selective enforcement claim met, "a court can properly grant summary judgment." *Id.* Based on the evidence adduced by plaintiffs, I find that no jury could reasonably conclude that plaintiffs have satisfied their burden irrespective

of the facts considered at summary judgment: those pleaded in plaintiffs' First Amended Complaint or those alleged in opposition to summary judgment.

Taking as true the facts contained in plaintiffs' pleadings—that plaintiffs were violated by defendant Burkart on July 11, 2016 for having a pool of standing water onsite, but Caucasian workers onsite at a later point were not violated for the same pool of standing water, FAC ¶¶ 190, 201—plaintiffs have raised no genuine issue of material fact on the similarity of the 34th Avenue enforcement action and its comparator. In reviving plaintiffs' selective enforcement claims on appeal, the Second Circuit concluded that while plaintiffs had plausibly alleged that they were similarly situated to their proffered comparator, this standard was "barely" met. *Hu*, 927 F.3d at 91. The Court was disinclined to grant defendants' Motion to Dismiss based on the sufficiency of plaintiffs' comparators given the "inquiry's fact intensive nature," but explained that discovery in this case would shed light on the "water depth, the existence of other building code violations . . . or any number of on-site characteristics that render the resemblance between the plaintiffs and the white workers less than 'reasonably close.'" *Id*. at 97. Following discovery, and contrary to the Second Circuit's suggestion, plaintiffs have adduced no new evidence on whether the catchment ponds on the two days were reasonably similar. For example, plaintiffs have provided no evidence of how deep the standing water was on those days, how long it had been sitting at the site, or whether any other elements of the ponds were materially similar.

While plaintiffs' minimal allegations concerning the resemblance between themselves and their proffered comparator may have satisfied the plausibility standard to survive a motion to dismiss, the standard at summary judgment is much higher. *See Casciani*, 659 F. Supp. 2d at 445–46. "[A]t the summary judgment stage, [] 'plaintiff[s] must present evidence comparing [themselves] to individuals that are similarly situated.'" *Vassallo v. Lando*, 591 F. Supp. 2d 172,

184 (E.D.N.Y. 2008) (quoting *Sebold v. City of Middletown*, No. 5-CV-1205, 2007 WL 2782527, at *26, 2007 U.S. Dist. LEXIS 70081, at *81 (D. Conn. Sept. 21, 2007)). Plaintiffs have failed to satisfy that burden here. In the absence of any additional evidence on the resemblance between plaintiffs and their comparator, no jury could reasonably find that plaintiffs and their comparators are similarly situated.

The insufficiency of plaintiffs' comparator is even more glaring if I accept plaintiffs' rendition of facts submitted in opposition to summary judgment—that majority non-Asian workers were not violated for standing water at the 34th Avenue worksite on March 23, 2016, but plaintiffs, who were onsite on July 11, 2016, were violated even though there was then no standing water.[6] As an initial matter, certain facts alleged in plaintiffs' opposition sap the strength from plaintiffs' selective enforcement claims. Plaintiffs proffer that Eric Hu did not take over the 34th Avenue worksite until July 11, 2016, *see* Hu Dep. 111:15−18; however, they also submit that Mr. Hu was onsite on March 23 and even spoke with defendant Burkart during Mr. Burkart's inspection. Pls.' 56.1 ¶ 13. Moreover, plaintiffs do not dispute that individuals of different races worked at the 34th Avenue worksite on both days. *See id.* 56.1 ¶¶ 14−15. Defendants allege that Burkart treated plaintiffs differently on July 11 because most of the workers onsite that day were Asian. *See id.* ¶ 15. However, an inspection of the record reveals that only one more Asian worker was onsite on July 11 than on March 23rd. *See id.* ¶ 15 (identifying Wayne Fried (Caucasian), Steven Scrudato (Caucasian), Ron Vassar (Black), Eric Hu (Asian) and Joe Sun (Asian) as the workers onsite on March 23, 2016 and Steven Scrudato, Ron Vassar, Eric Hu, and two other Asians as onsite on July

---

[6] Defendants argue that I should ignore plaintiffs' contention that there was no standing water on July 11, 2016 because the evidence that plaintiffs' have submitted in support of their claim is inadmissible. It is not necessary to resolve this matter, as, even assuming the evidence is admissible, plaintiffs have failed to satisfy the similarly situated prong of their selective enforcement claims.

11, 2016). To the extent that plaintiffs allege their selective treatment was, in part, on the basis of race—which requires showing that similarly situated individuals of a *different race* were subject to different treatment, *see Vassallo*, 591 F. Supp. 2d at 184—the racial composition of the worksites on these dates weakens plaintiffs' argument.

The ultimate death knell of plaintiffs' equal protection and § 1981 claims, however, is their contention that there *was* standing water onsite on March 23rd, but that there was *no* standing water onsite on July 11. *See* Pls. 56.1 ¶ 13. At this juncture, plaintiffs' selective enforcement claims relate exclusively to their allegation of "differential treatment by the same defendant (Burkart) *for the same [condition]* (having a pool of standing water) at the same jobsite (34th Avenue worksite)," *Hu*, 927 F.3d at 97 (emphasis added). If I accept plaintiffs' latest proffered facts as true, then the conditions at the 34th Avenue worksite on the day that plaintiffs were issued a notice of violation were materially different from the conditions on March 23, when defendant Burkart visited 34th Avenue but did not issue a violation: on one day there was standing water, on the other day there was not. In light of this critical difference, I find that no reasonable jury could conclude plaintiffs and their proffered comparator are reasonably alike. Plaintiffs have thus failed to satisfy the threshold requirement of their selective enforcement claims.

My conclusion does not mean that plaintiffs' latest allegations are not alarming. If, as plaintiffs suggest, there was no standing water on July 11, then the notice of violation served by defendant Burkart was altogether legally improper, not merely selectively enforced. However, at this juncture, I am bound to consider whether plaintiffs' proffered facts satisfy the elements of a selective enforcement claim. *See Brandon v. City of N.Y.*, 705 F.Supp.2d 261, 278 (S.D.N.Y. 2010) ("[I]t is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 319 (N.D.N.Y. 2013)

(noting that a party may not raise new theories of liability on summary judgment). Here they do not.

Nor is summary judgment precluded by plaintiffs' evidence of racial and personal animus. The record before me contains substantial evidence of defendant Burkart's malice toward Mr. Hu and Asians, including both Mr. Scrudato's and Mr. Fried's sworn statements, attesting to Mr. Burkart's dislike of Asians and his calling Mr. Hu a "rat." *See* Fried & Scrudato Affs. While this evidence is troubling, it cannot cure plaintiffs' failure to proffer a similarly situated comparator for the 34th Avenue worksite. Accordingly, I grant defendants' summary judgment on plaintiffs § 1981 and equal protection claims.

## IV.    Plaintiffs' State Law Claim.

Having dismissed plaintiffs' equal protection and § 1981 claims, I will dismiss without prejudice plaintiffs' state-law claims alleging the misuse of taxpayer funds under New York State General Municipal Law § 51.

A district court "may decline to exercise supplemental jurisdiction over" a state-law claim if, as I have done here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When evaluating whether to exercise supplemental jurisdiction in this situation, district courts should balance "values of judicial economy, convenience, fairness, and comity—the '*Cohill* factors.'" *Klein & Co. Futures, Inc. v. Bd. of Trade of the City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Supreme Court has made clear, however, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

This is such a case. Although discovery has been completed, the discovery in this case is transferable to a future suit brought in state court. Moreover, the interest of comity strongly weighs in favor of allowing plaintiffs' state law claim—a taxpayer lawsuit under General Municipal Law § 51—to be adjudicated in state court. *See Morton v. Cnty. of Erie*, 796 F. App'x 40, 44 (2d Cir. 2019) ("[T]he determination of complex state law claims in the first instance is better left to those courts."). Because I find that plaintiffs' state law claims would be properly resolved by a state court, I also conclude that it would be neither unfair nor inconvenient to have parties litigate in such a forum. Therefore, I decline to exercise supplemental jurisdiction over plaintiffs' pendent state-law claim and dismiss it without prejudice. Should plaintiffs choose, they may refile this claim in state court along with other state-law claims.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted in its entirety. The plaintiffs' *LeClair* equal protection and § 1981 claims are dismissed. The plaintiffs' state-law claim is dismissed without prejudice to re-filing in state court. The Clerk of Court is directed to enter judgment in favor of defendants and terminate plaintiffs' case.

SO ORDERED.


_____/s/_____

Allyne R. Ross
United States District Judge


Dated:          January 20, 2022
                Brooklyn, New York

24